MARTIN L. FINEMAN (California State Bar No. 104413)
KELLY M. GORTON (California State Bar No. 300978)
MONDER KHOURY (California State Bar No. 312949)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
E-Mail: martinfineman@dwt.com
        kellygorton@dwt.com
        mikekhoury@dwt.com

Attorneys for Plaintiff
lebronze alloys SAS

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEBRONZE ALLOYS SAS, a France société par actions simplifiée,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>TESLA MOTORS, INC., a Delaware corporation,<br><br>　　　　　　　Defendant. | Case No.  3:19-cv-02918<br><br>**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD AND DECEIT;**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff lebronze alloys SAS ("LBA"), for its Complaint against Defendant Tesla Motors, Inc. ("Tesla"), alleges as follows:

## SUMMARY OF COMPLAINT

1. Plaintiff LBA is a French manufacturer and seller of metal alloy parts for use in various industrial applications, which sells a part to Defendant Tesla that is used by Tesla in the motors for its vehicles. By February 2019, Tesla had failed to pay LBA €1,559,420.06 (approximately $1,768,460.32) for goods delivered to Tesla and had caused LBA additional damages. Faced with the prospect of being sued, Tesla procured from LBA an amendment to the agreement between the parties. Tesla has failed to perform the agreement and the amended agreement. In fact, at the time it was procuring the amended agreement, Tesla kept secret from LBA the facts that it intended not to order good faith quantities of the part, that it had already decided to stop purchasing the part from LBA, that it had redesigned the part, and that it intended to prematurely terminate the agreement. By this Complaint, LBA seeks money damages for Tesla's breach of contract, breach of the covenant of good faith and fair dealing, and fraud and deceit.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is proper in this Court based on diversity of citizenship, 28 U.S.C. § 1332. Complete diversity between the parties exists, as Plaintiff LBA is a citizen of France, while Defendant Tesla is a Delaware corporation with its principal place of business in California and hence a citizen of those States. The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

3. This Court has personal jurisdiction over Tesla, which has its principal place of business in Palo Alto, California and is therefore domiciled within this State and this District. Furthermore, the contract between the parties specifies that if a dispute between the parties cannot be resolved through good faith negotiations within a reasonable time, federal courts sitting in the Northern District of California and the state courts of California have exclusive jurisdiction to

2

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD AND DECEIT; DEMAND FOR JURY TRIAL
*lebronze alloys SAS v. Tesla Motors, Inc.*
4815-1387-8920v.2 0112733-000001

1 determine such disputes, and that the parties irrevocably submit to the exclusive jurisdiction of those courts.

2. 

3. 4. Venue is proper in this Court because, among other things, Tesla has its principal place of business in Palo Alto, California, is subject to the Court's personal jurisdiction with respect to this civil action, and is a resident of the Northern District of California. Furthermore, the contract between the parties specifies that if a dispute between the parties cannot be resolved through good faith negotiations within a reasonable time, federal courts sitting in the Northern District of California and the state courts of California have exclusive jurisdiction to determine such disputes, and that the parties irrevocably submit to the exclusive jurisdiction of those courts. In addition, as described below, a substantial part of the events or omissions giving rise to the claims stated herein occurred in this District.

**THE PARTIES**

5. Plaintiff lebronze alloys SAS ("LBA") is a France société par actions simplifiée, with its principal place of business in Suippes, France. Prior to December 1, 2016, LBA was known as lebronze industriel SAS. As of December 1, 2016, lebronze industriel SAS changed its name to lebronze alloys SAS. lebronze alloys SAS will be referred to herein as "LBA." LBA is a manufacturer and seller of a wide range of products composed of copper alloys, copper, nickel alloys, aluminum alloys, specialty steels, titanium and nickel superalloys. LBA's products are used in many major industries such as aerospace, oil and gas, power, railway, and automobiles, among others.

6. Defendant Tesla Motors, Inc. ("Tesla") is a Delaware corporation with its principal place of business in Palo Alto, California. Tesla is a manufacturer and seller of electric powered automobiles.

**FACTUAL BACKGROUND**

7. LBA and Tesla entered into a written contract pursuant to which LBA supplies a particular metal part to Tesla. The part is known as C101 Endring, Rotor, 3DU, 1M (the "Endring"). Tesla uses the Endring as a component in the electric motors in its vehicles.

8. The parties agreed to several documents, namely, the Production Pricing Agreement, Tesla Motors, Inc. General Terms and Conditions for Prototype or Production Parts or Service, and an Amendment to Tesla Motors, Inc. General Terms and Conditions for Prototype or Production Parts or Service. Those documents are collectively referred to as the "Agreement." A true and correct copy of the Agreement is attached hereto as Exhibit A. As described below, the parties subsequently agreed to the Amended and Restated Production Pricing Agreement, hereinafter referred to as the "Amended Agreement". A true and correct copy of the Amended Agreement is attached hereto as Exhibit B.

9. Tesla placed various purchase orders under the Agreement for volumes of the Endring.

10. LBA dutifully supplied the Endrings in response to those orders by Tesla.

11. Tesla, however, failed to pay LBA in full for the Endrings ordered and delivered pursuant to the Agreement.

12. LBA made numerous efforts to get Tesla to pay the amounts Tesla owed to LBA. LBA convened meetings, sent e-mails and letters, and initiated numerous telephone calls in an effort to get Tesla to pay what it owed, to answer any questions Tesla may have had, and to resolve any issues. In addition, LBA demanded reasonable assurances of performance by Tesla.

13. LBA's efforts to get Tesla to pay what Tesla owed LBA were mostly ignored. Despite good faith efforts by LBA over a reasonable period of time to obtain payment, Tesla did not pay the amounts Tesla owed to LBA nor did Tesla provide reasonable assurance of performance.

14. As of February 2019, Tesla owed LBA €1,559,420.06 (approximately $1,768,460.32) for Endrings Tesla ordered and LBA had delivered to Tesla.

15. In addition, Tesla had caused LBA other harm as a result of its failure to pay, including inability to factor the receivables due from Tesla due to Tesla's lack of creditworthiness, harm to LBA's reputation, increased costs of doing business, interest, attorneys' fees, and costs.

16. LBA demanded payment from Tesla and eventually was required to inform Tesla that LBA would file suit, if necessary, to enforce its legal rights.

17. As a result, Tesla induced LBA to enter into the Amended Agreement dated February 22, 2019. Among other things, the Amended Agreement reaffirmed the applicability of the General Terms and Conditions; forecasted that Tesla would purchase 250,000 vehicle sets from LBA from September 2018 until February 2020; required Tesla to discuss in good faith volume and price of products; established a contract term through February 29, 2020; required Tesla to discuss in good faith volume and pricing beyond that period; and provided for automatic renewal of the Amended Agreement if the parties did not reach a new agreement regarding volumes and pricing.

18. Tesla has not performed the terms of the Agreement and the Amended Agreement.

19. On April 17, 2019, Tesla, without notice, requested an immediate telephone conference call, during which Tesla purported to give verbal notice of termination of the Agreement and the Amended Agreement, without advance notice and contrary to the terms of the Agreement and the Amended Agreement. This constituted a breach, repudiation and anticipatory breach of the Agreement and the Amended Agreement.

20. Tesla has admitted to LBA that during the fourth quarter of 2018, before entering into the Amended Agreement, Tesla had decided to change the design of the Endring, such that it will no longer purchase the Endring from LBA. Tesla has also admitted that it has been discussing a supply relationship with other manufacturers but that LBA was not told of those negotiations or allowed to bid to supply the new designed part.

21. Thus, while making the promises contained in the Amended Agreement, LBA is informed and believes that Tesla intentionally concealed the fact that it had already decided to not make further orders of the Endrings after the beginning of 2019, to remove LBA from Tesla's list of suppliers, and to end the contract before February 29, 2020.

22. Tesla has not acted in good faith toward LBA. The Amended Agreement was signed February 22, 2019 but within weeks (by April 1, 2019) Tesla informed LBA that for the

third and fourth quarters of 2019, the volume of Endrings ordered would decline to 4000 per week. LBA asked Tesla after the Amended Agreement was entered into to issue purchase orders in accordance with the Amended Agreement. Tesla did not do so. In fact, epitomizing Tesla's bad faith, Tesla placed a release for a total of one Endring, which is only half the number necessary to build a single car.

23. As a further example of Tesla's bad faith toward LBA, Tesla refused a shipment of Endrings it had ordered from LBA, claiming that some of the parts were defective. LBA sent a representative from France to Tesla's factory in Nevada and agreed to rework any parts needing it. After LBA arranged for transportation, reworking, and re-delivery of the parts, Tesla abruptly changed its position and notified LBA that Tesla wanted to keep all of the parts, as-is and without reworking. LBA is informed and believes that this indicates that the parts as originally delivered were without defects.

## FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

24. LBA incorporates by reference the allegations of Paragraphs 1 – 23 as though fully set forth herein.

25. LBA and Tesla are parties to the Agreement and Amended Agreement, as alleged above.

26. Pursuant to the Agreement and the Amended Agreement, Tesla reaffirmed the applicability of the General Terms and Conditions; agreed to purchase a forecasted volume of 250,000 vehicle sets from September 2018 until February 2020; agreed to a term of the Amended Agreement through February 29, 2020; agreed to discuss in good faith volumes and pricing beyond that period; and agreed to automatic renewal if the parties did not make a new agreement regarding volumes and pricing. Tesla also agreed to resolve any dispute through good faith negotiations and to discuss in good faith volumes and pricing of products.

27. Tesla has filed to perform its promises, duties, and obligations in the Agreement and the Amended Agreement and has repudiated and anticipatorily breached the Agreement and the Amended Agreement.

28. LBA has performed all obligations, covenants and conditions required of it under the Agreement and the Amended Agreement. To the extent any of LBA's obligations, covenants and conditions has not yet come due or that performance has been delayed, it has been excused or waived by Tesla's breaches of the Agreement and the Amended Agreement.

29. As a result of Tesla's unexcused and unjustified breaches of the Agreement and the Amended Agreement, LBA has been damaged and will continue to incur damages in an amount according to proof, plus interest, attorneys' fees, and costs.

WHEREFORE, LBA prays for judgment as set forth below.

## SECOND CLAIM FOR RELIEF

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

30. LBA incorporates by reference the allegations in Paragraphs 1 – 29 as though fully set forth herein.

31. Inherent in every agreement is a covenant of good faith and fair dealing, such that the parties promise to act in good faith with respect to the subject matter thereof, and that each party will not take any action or refrain from taking any action that will deprive the other party of the benefits of the agreement.

32. In addition to the covenant of good faith and fair dealing implicit and inherent in every agreement, Tesla explicitly promised in the Agreement to act in good faith toward LBA. For example, Tesla expressly promised in the Agreement to discuss in good faith volumes and pricing. As another example, Tesla expressly promised in the Agreement to meet with LBA to discuss in good faith potential cost savings in the production process. As a further example, Tesla expressly promised in the Agreement that it would endeavor to resolve any dispute arising under or relating to the Agreement through good faith negotiations.

33. In addition to the covenant of good faith and fair dealing implicit and inherent in every agreement, Tesla explicitly promised in the Amended Agreement to act in good faith towards LBA. For example, Tesla expressly promised in the Amended Agreement to endeavor to resolve any dispute through good faith negotiations and promised to discuss in good faith volumes and pricing of products.

34. Tesla has breached the covenant of good faith and fair dealing by acting and failing to act as alleged above. In so doing, Tesla has acted to deprive LBA of the benefits of the Agreement and Amended Agreement between them.

35. As a direct and proximate result of Tesla's breach of the covenant of good faith and fair dealing, LBA has and will continue to incur damages in an amount according to proof, plus interest, attorneys' fees, and costs.

WHEREFORE, LBA prays for judgment as set forth below.

### THIRD CLAIM FOR RELIEF

### FRAUD AND DECEIT

36. LBA incorporates by reference the allegations of Paragraph 1 – 35 as through fully set forth herein.

37. Tesla made the promises and representations described above and concealed the material information described above.

38. Tesla made those promises and representations and concealed that information, with the intention of inducing LBA to act as it did.

39. LBA is informed and believes that Tesla acted intentionally in making those promises and representations and concealing that information. LBA is informed and believes that Tesla knew that the promises and representations were false when made or, alternatively, Tesla lacked a reasonable ground to believe them to be true when made.

40. LBA relied on Tesla's promises and representations in acting as it did.

41. LBA was unaware of the falsity of Tesla's promises and representations when it relied on Tesla's promises and representations and was justified in relying on Tesla's promises and representations.

42. Tesla intended that LBA would rely on Tesla's promises and representations.

43. As a proximate result of Tesla's false promises, representations, and concealment of facts, LBA has suffered injury and harm, and will continue to incur damages in an amount according to proof, plus interest, attorneys' fees, and costs.

44. Tesla's acts were committed fraudulently, with malice toward LBA and in order to oppress LBA. Therefore, an award of exemplary damage is appropriate, in order to punish Tesla and to make an example of its conduct.

WHEREFORE, LBA prays for judgment as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, LBA prays for judgment against Tesla as follows:

1. For a judgment in its favor and against Tesla;
2. For money damages in an amount according to proof;
3. For exemplary damages;
4. For interest, attorneys' fees, and costs; and
5. For such other and further relief as the Court may deem just and proper.

Dated: May 28, 2019.

DAVIS WRIGHT TREMAINE LLP

By: _____
Martin L. Fineman

Attorneys for Plaintiff
lebronze alloys SAS

## DEMAND FOR JURY TRIAL

Plaintiff lebronze alloys SAS hereby demands a trial by jury of all issues so triable.

Dated: May 28, 2019.

DAVIS WRIGHT TREMAINE LLP

By: _____
Martin L. Fineman

Attorneys for Plaintiff
lebronze alloys SAS